UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO: 0:24-cv-60161-WPD

WHERE'S EILEEN, LLC; MARK J.
FISCHER and EILEEN FISCHER,

        Plaintiffs,

v.

ACE AMERICAN INSURANCE COMPANY,

        Defendant.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO STAY AND COMPEL ARBITRATION**

COMES NOW, Plaintiffs, Where's Eileen, LLC ("Where's Eileen"), Mark J. Fischer and Eileen Fischer ("Mr. and Mrs. Fischer"), by and through undersigned counsel, and pursuant to Local Rule 7.1, hereby file this Response in Opposition to Defendant's Motion to Stay and Compel Arbitration [DE 11] (the "Motion"), and respectfully states as follows:

**I.  INTRODUCTION**

Despite attempting to work an acceptable agreement to arbitrate the dispute between the parties,[1] Ace American Insurance Company ("ACE") and the Plaintiffs simply cannot reach agreement. Regardless of these negotiations, the facts are that: 1) ACE does not have a binding arbitration clause as to Plaintiffs, Mr. and Mrs. Fischer; and 2) ACE has waived its right to compel arbitration by waiting almost four (4) years to seek it. Therefore, this Court should deny ACE's Motion.

---

[1] *See* P's Motions [DE 13] and [DE 15].

## II.  FACTS AT ISSUE TO MOTION

"WHERE'S EILEEN" is a 2019, 112' Ocean Alexander motor yacht, HIN No. OAX11204B819 (the "Vessel") that was insured under ACE's Policy No. Y09879407 (the "Policy"). Compl. [DE 1-1] at ¶9. The effective dates of the Policy were June 10, 2019 to June 10, 2020. *Id.* at ¶12.

The Policy includes a Florida Amendatory Endorsement which states in relevant part (the "Florida Endorsement"):

> You agree not to bring legal action against us unless you have first complied with all conditions of this policy. <u>For property, you also agree to bring any action against us within five years after a loss occurs, but not until 30 days after proof of loss has been submitted to us</u>. However, this five-year period is extended by the number of days between the date that proof of loss is submitted and the date the claim is denied in whole or in part.

Policy [DE 1-1] at 75 (emphasis added).[2]

The subject Policy contains the following "Alternate dispute resolution" Clause (the "Arbitration Clause):

> Any dispute, controversy, proceeding or claim, whether in contract, tort, common, or statutory law, arising out of or relating to:
> · any claim made under this Policy for loss or damage; or
> · the breach, termination, enforcement, interpretation, or validity of this Policy, including the determination of the scope or applicability of this Dispute resolution provision; or
> · the relationship between you and us,
> may be resolved by arbitration as provided below.
> The arbitration will be conducted pursuant to the current Marine Arbitration Rules and the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc. The appointment of arbitrator(s) shall be conducted as follows:
> · the parties shall agree on a sole arbitrator to decide the disputed issue;
> · if the parties are unable to agree on a sole arbitrator, each party will appoint an arbitrator and those two (2) arbitrators will appoint a third who will serve as the chair of the arbitration panel. If one party fails to appoint its arbitrator or the two party-appointed arbitrators fail to appoint a third arbitrator, the parties are directed to follow the Rules of the Society of Maritime Arbitrators, Inc.;

---

[2] Page numbers listed are those produced by the CM/ECF system.

> · any hearings shall be conducted in a locality agreed by the parties. If the parties cannot agree on a locality, then any hearing(s) shall be conducted in the State appearing in your address as contained upon the Declarations Page;
> · in the event of a conflict between the Rules of the Society of Maritime Arbitrators, Inc. and this Policy, the terms of this Policy shall govern;
> · <u>a demand for arbitration must be served on the other party or parties within one (1) year of the date we issue our final coverage determination;</u>
> · <u>we may arbitrate the amount of your loss or damage without waiving our right to determine coverage or a lack of coverage for the loss;</u>
> · any decision of the arbitrator(s) shall be final, binding on the parties hereto, and not subject to further review; and
> judgement[3] upon any award rendered by the arbitrator(s) may be entered in any court having jurisdiction.

Policy [DE 1-1] at 70-71 (emphasis added).

The Vessel suffered two losses during the policy period. The first loss occurred on June 29, 2019 when the Vessel suffered a partial flooding when a toilet's solenoid valve malfunctioned while docked in Baltimore, Maryland. Compl. [DE 1-1] at ¶29. The damage included floor wood panel damage, carpet damage, wall fabric damage, veneer damage, and water damage to the Vessel's sky lounge. *Id.* at ¶¶30-32. The second loss occurred on September 9, 2019, while the Vessel experienced a direct lightning strike while cruising at sea off the coastline of North Carolina. *Id.* at ¶33. The lightning struck the Vessel's starboard VHF antenna, travelled through the fiberglass arch continuing through the hull, machinery, and wiring of the Vessel and exited through the starboard propeller shaft. *Id.* at ¶35. As a result of the lightning strike, the insured Vessel was dead in the water in the Atlantic Ocean. *Id.* at ¶37.

Both the flooding incident and the lightning strike constitute insured "occurrences" under the Policy terms and Where's Eileen filed timely notices of loss with the insurer. *Id.* at ¶¶16-18; *see also* Proof of Loss dated April 7, 2020, attached hereto as **Exhibit 1**. On May 26, 2020, ACE issued a payment of $1,404,178.22 for the losses (the "Partial Payment"). *Id.* at ¶¶89-90. In the

---

[3] "E" is in original Policy.

letter enclosing payment, ACE's attorneys confirm that "[ACE] has accepted and acknowledged coverage relating to the lightning strike onboard your client's vessel…" *See* letter from ACE's attorneys dated May 26, 2020 attached hereto as **Exhibit 2**. ACE also admitted that it was responsible for paying the flooding damage, again, accepting and acknowledging coverage under the Policy. Compl. [DE 1-1] at ¶¶101, 105-106. There have been no other payments from ACE to Where's Eileen since May, 26, 2020. Compl. [DE 1-1] at ¶¶91-93.

Where's Eileen issued its Notice of Intent to Initiate Litigation on October 6, 2023 (the "Notice" at [DE 1-3]). The Plaintiffs filed suit on December 23, 2023, well after its Proofs of Loss, P's Ex.1, as required by the Florida Endorsement. Despite admitting coverage for both claims, receiving Where's Eileen's Proof of Loss and paying Where's Eileen over $1 million and receiving notice of the Notice, ACE did nothing to seek arbitration.

### III. STANDARD OF REVIEW

"FAA's policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc*., 596 U.S. 411, 142 S. Ct. 1708, 1713, 212 L. Ed. 2d 753 (2022) (citing *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp*., 460 U. S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). The policy is to "make arbitration agreements as enforceable as other contracts, but not more so." *Id.*, citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U. S. 395, 404, n. 12, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). Accordingly, a court must hold a party to its arbitration contract just as the court would to any other contract and apply ordinary state law contract principles in doing so. *Id.* at 1713-14, citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U. S. 213, 218-221, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985); *National Foundation for Cancer Research v. A. G. Edwards & Sons, Inc*., 821 F. 2d 772, 774, 261 U.S. App. D.C. 284 (D.C. DC 1987).

Thus, in ruling on a motion to compel arbitration, the Court must evaluate whether: (a) the parties agreed to arbitrate; (b) ACE can compel the Plaintiffs to arbitrate the claims made in Plaintiffs' Complaint and; (c) ACE waived the right to compel arbitration. *Oscar Morales, James Esserman & Rafael Perez MD, LLC v. Perez*, 952 So. 2d 605 (Fla. 3d DCA 2007). Florida law provides that "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." Florida Statute § 682.02(2). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). The law treats silence or ambiguity about the question "'*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement' -- for in respect to this latter question the law reverses the presumption." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45, 115 S. Ct. 1920, 1924 (1995) (emphasis in original). "[W]aiver of arbitration rights is now evaluated under the same state-law standards governing other contract waiver issues." *Derriman v. Mizzen & Main LLC*, 2023 U.S. Dist. LEXIS 230653, at *11 (M.D. Fla. Dec. 29, 2023) (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417-18, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022)).

### IV. THIS COURT, NOT AN ARBITRATION PANEL, MUST ESTABLISH ARBITRABILITY

The Policy does not state that arbitrators can determine arbitrability. The word "arbitrability" or anything related to arbitrability is not found in the Policy and certainly not in the Arbitration Clause. As such, the determination of arbitrability must be undertaken by the Court. *First Options*, 514 U.S. 938 at 944-45 ("If, on the other hand, the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it

Case 0:24-cv-60161-WPD   Document 17   Entered on FLSD Docket 04/17/2024   Page 6 of 11

CASE NO: 0:24-cv-60161-WPD
Page 6

would decide any other question that the parties did not submit to arbitration, namely, independently."); *see also* § 682.02, Fla. Stat. (2023) ("by statute in Florida, the court decides what controversies are subject to an arbitration agreement"); *see also Fallang Fam. Ltd. P'ship v. Privcap Cos., LLC*, 316 So. 3d 344, 348 (Fla. 4th DCA 2021)( "A court decides the gateway issues of whether an agreement to arbitrate exists or a controversy is subject to arbitration."); *Sherwood v. Slazinski*, 162 So. 3d 229, 231 (Fla. 2d DCA 2015) ("Florida Statutes demand" that it is up to a court to decide if a matter is subject to arbitration); *UATP Mgmt., LLC v. Barnes*, 320 So. 3d 851, 856 (Fla. 2d DCA 2021); *see also, Romano v. Goodlette Off. Park, Ltd.*, 700 So. 2d 62, 63 (Fla. 2d DCA 1997) (broad language to submit "any dispute" to arbitration is not sufficient to find that the parties intended to submit the question of arbitrability to the panel.).

Thus, this Court should easily find that arbitrability rests with it alone and not the arbitration panel.

### V. ACE WAIVED ITS RIGHT TO COMPEL ARBITRATION

The Arbitration Clause unequivocally states that *"a demand for arbitration must be served on the other party or parties within (1) one year of the date we issue our final coverage determination."* Compl. [DE 1-1] at 70-71. It is clear that ACE did not demand arbitration until February 29, 2024, almost four years after its final coverage determination. Mot. [DE 11]. In its Motion [DE-11], ACE argues that it has not issued a "final Coverage determination". However, Florida law holds otherwise. By making payment, partial or otherwise, ACE has admitted coverage and made a "final coverage determination" as contemplated by the Arbitration Clause in the Policy. In *Plante v USF&G Specialty Insurance Company*, No. 03-23157-CIV, 2004 WL 741382, 2004 U.S. Dist. LEXIS 4875 at *14 (S.D. Fla. Mar. 2, 2004), reh'g denied, 2004 U.S. Dist. LEXIS 11579 (S.D. Fla. Jun. 2, 2004) the Court held that *"once an insurer has made a payment on plaintiff's*

6
michelleoterovaldes.com

*claims, it has waived its coverage defenses that would otherwise exist regardless whether it pays the policy limits or an amount less than that… By making payment on Plante's claim, USF&G did not refuse coverage but rather admitted it."* This is because Florida Statute § 627.426(2) provides that "an insurer's failure to provide written notice of its refusal to cover a claim works an estoppel." *Id.*, citing § 627.426(2), Fla. Stat; *see also Geico Gen. Ins. Co. v. Mukamal*, 230 So. 3d 62 (Fla. 3d DCA 2017) (insurer waives coverage defenses if not preserved); *Bryant v. GeoVera Specialty Ins. Co.*, 271 So. 3d 1013 (Fla. 4th DCA 2019) (insurer waives requirements in policy when pays sub-limits on policy); *Axis Surplus Ins. Co. v. Caribbean Beach Club Ass'n*, 164 So. 3d 684 (Fla. 2d DCA 2014) (insurer waives forfeiture provision when acquiesces to insured's failures); *Lllerena v. Lumbermens Mut. Cas. Co.*, 379 So. 2d 166 (Fla. 3d DCA 1980) (payment of claim constitutes admission of liability for coverage); *General Motors Acceptance Corp. v. Am. Liberty Ins. Co.*, 238 So. 2d 450 (Fla. 1st DCA 1970) (insurer estopped from denying coverage by reason of the conduct of insurer's agent, here ACE's attorneys).

There is a difference in making a coverage determination and adjusting the amount of a loss per the terms and conditions of an insurance policy. The wording contained in the Arbitration Clause recognizes this difference. Here, ACE clearly made a final coverage determination under the law, when its lawyers stated that ACE have "accepted and acknowledged coverage." P.'s Ex.2. The very next bullet point in the Arbitration Clause states as follows: "*we may arbitrate the amount of your loss or damage without waiving our right to determine coverage or a lack of coverage for the loss…*" The clear import here is that ACE wanted to "leave its options open" in bringing a declaratory judgment action even if arbitration was demanded. *See, e.g., FCCI Commer. Ins. Co. v. Armour*, 132 So. 3d 864 (Fla. 2d DCA 2014) (staying declaratory judgment action improper when arbitration action pending). However here, Where's Eileen invoked its right not to arbitrate

by filing this suit, as it is entitled to under the Florida Endorsement[4], well after ACE should have sought arbitration if it wanted it.

ACE argues in its Motion that since the $1,404,178.22 Paid was a partial payment, it should not be considered a "final coverage determination". The Arbitration Clause itself distinguishes between the amount of a loss or damage and the determination of coverage or lack thereof. To accept ACE's argument would create a situation where an insurer could make partial payment on a claim and do nothing else for an indeterminate amount of time until an insured is left little recourse but to file suit for breach of contract and still allow the insurer to invoke the arbitration provision. This is exactly what happened here. However, the Arbitration Clause does not allow the insurer an indeterminate amount of time to demand arbitration but requires a demand for arbitration to be made within one-year.

This is precisely what ACE has argued in other arbitrations against its insureds when using the Arbitration Clause as a sword rather than a shield. For example, in the case of *Montecalvo, as Owner of M/Y WASTE KNOT v. ACE American Insurance Company*, SMA No. 4255 at 2 (2015 (Fox, Arb.)[5], ACE issued a partial payment to an insured, which represented, what ACE called "a fair and reasonable settlement for the loss." ACE did in *WASTE KNOT* what it did in this case, where ACE states they are going to pay their number and nothing further. *See* Compl. [DE 1-1] at ¶89-94. While the arbitration clause of the ACE policy at issue in *WASTE KNOT* is admittedly different in that it stated that "[t]he request for arbitration must be filed within one (1) year of the date of loss or damage", *WASTE KNOT* at 4, the purpose for the limitation in the arbitration clause remained the same—a bar bringing the matter in arbitration beyond 1 year. The arbitrator in

---

[4] Contemplates insured filing suit after submitting Proof of Loss. Policy [DE 1-1] at 75.
[5] Attached hereto as **Exhibit 3** ("*WASTE KNOT*").

*WASTE KNOT* found the purpose of this clause to be clear; to limit the time for which arbitration can be commenced to 1 year. *Id.* at 16.

As noted above, ACE did not make a demand for arbitration until February 29, 2024, three years, nine months, and eighty-seven days since its final coverage determination. Therefore, this Court should easily find that ACE waived its right to commence arbitration.

**VI.  ACE Has No Right to Compel Non-Signatories Mr. and Mrs. Fischer to Arbitrate**

Ordinarily, a party cannot compel arbitration under an arbitration agreement to which it was not a party. *Kratos Invs. LLC v. ABS Healthcare Servs., LLC*, 319 So. 3d 97, 101 (Fla. 3d DCA 2021); *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 943 (Fla. 1st DCA 2004); *Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 633 (Fla. 4th DCA 2013). But Florida and federal courts have recognized that principles of equitable estoppel sometimes allow <u>a non-signatory to compel arbitration against a signatory to a contract containing an arbitration agreement</u>. *Perdido Key Island Resort Dev., LLP v. Regions Bank*, 102 So. 3d 1, 5 (Fla. 1st DCA 2012); *see also Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1320 (11th Cir. 2013). However, that is not the situation here, as Mr. and Mrs. Fischer are not insureds under the Policy, Policy [DE 1-1] at 31 (listing only Where's Eileen as insured on Policy), and have not demanded arbitration.

A U.S. court's approach to joining non-signatories to an arbitration depends on the relevant state law principles on the validity, revocability, and enforceability of contracts. *Perry v. Thomas*, 482 U.S. 483, 493, n.9, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987); *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359 (11th Cir. 2005) (citing *Perry*). This is not a situation where the limited exceptions under Florida law requiring arbitration apply here. *See, e.g., Rolls-Royce PLC v. Royal Caribbean Cruises, Ltd.*, 960 So. 2d 768 (Fla. 3d DCA 2007) (noting exceptions limited to non-signatory requiring signatory to arbitrate did not apply to the circumstances before that court). Here, ACE

lumps Where's Eileen together with Mr. and Mrs. Fischer in arguing that all the claims, including those of non-signatories, must be arbitrated. However, the status of the law in Florida is that people in their individual capacities that may have signed documents which have arbitration clauses are not signatories to the arbitration clause and cannot be compelled to arbitrate. *See, e.g., Perdido Key*, 102 So. 3d at 5.

Therefore, this Court should easily find that Mr. and Mrs. Fischer did not agree to arbitrate.

### **PRAYER**

WHEREFORE, Plaintiffs, Where's Eileen, LLC, Mark J. Fischer, and Eileen Fischer, respectfully request that this Honorable Court DENY Defendant's Motion to Stay and Compel Arbitration [DE 11], and for such other relief to which is just and proper.

Respectfully submitted,

LAW OFFICES OF MICHELLE OTERO VALDES

By: s/ Michelle Otero Valdés
Michelle Otero Valdes, B.C.S.
Florida Bar No. 14990
2030 S. Douglas Road, Suite 117
Coral Gables, Florida 33134
Tel: (305) 377-3700
Fax: (866) 702-4577
Email: mov@miamimaritimelaw.co
Email: admin@miamimaritimelaw.co
*Attorneys for Plaintiffs*

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 17, 2024, the foregoing document is being filed with this Court and served on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

CASE NO: 0:24-cv-60161-WPD
Page 11

/s/ Michelle Otero Valdés
Michelle Otero Valdés, B.C.S.

## SERVICE LIST

**DAVANT LAW, P.A.**
Aaron M. Dmiszewicki, Esq.
Florida Bar No. 111455
Charles S. Davant, Esq.
Florida Bar No. 15178
12 Southeast 7th Street
Suite 601
Fort Lauderdale, Fl 33301
Telephone: 954-4140400
Email: amd@davantlaw.com
Email: csd@davantlaw.com
*Attorneys for Defendant*