# EXHIBIT 3

## *In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company , As Respondent Under a Recreational Marine Insurance Policy dated May, No. 4255*

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company, As Respondent Under a Recreational Marine Insurance Policy dated May 9, 2012

June 12, 2015

## No. 4255

## Core Terms

claimant, arbitrate, vessel, time limit, repair, limitations period, arbitration clause, coverage, date of loss, estimate, waive, expire, email, settlement, ambiguous, marine, negotiate, insurance contract, summary judgment, untimely, inspect, insurance policy, estoppel, mitigate, contractual, estop, surveyor, appoint, handle, underwriter

**Counsel:**

For: Frank Montecalvo Blank Rome LLP

William R. Bennett, III, Esq.

Alan Weigel, Esq.

For: *ACE* American Insurance Company

Rubin, Fiorella & Friedman LLP

James E. Mercante, Esq.

Kristin E. Poling, Esq.

**Panel:** Thomas F. Fox, Sole Arbitrator

## Opinion

FINAL AWARD

**Background**

This arbitration arises out of a Recreational Marine Insurance Policy dated May 9, 2012 for the M/Y WASTE KNOT ("Vessel") between Frank Montecalvo ("Insured" or "Claimant"), and *ACE* American Insurance Company ("*ACE*" or "Respondent"), as Underwriter. Policy Y0677366A covered the Vessel for the period from May 9, 2012 to May 9, 2013.

The Vessel, a 2005, 57 foot Carver 560 Voyager Motor Yacht, sustained damage on October 29, 2012 while docked at a slip in Staten Island, NY as a result of "Superstorm Sandy." The policy had a stated Amount of Insurance of $ 860,000, with a $ 17,200 deductible.

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company, As Respondent Under a Recre....

### Claims

Claimant seeks insurance coverage from **ACE** under the policy for the loss. **ACE** seeks dismissal of Owner's claim as untimely.

### Facts

On October 29, 2012, the Vessel sustained damage during "Superstorm Sandy", while docked at a slip in Staten Island, NY.

On November 1, 2012, Claimant submitted a proof of loss to **ACE**. [1] On February 4, 2013, **ACE** arranged for a joint survey of the Vessel, which was attended by **ACE**'s appointed surveyor, Alcus Marine Technical Services, Inc., ("Alcus"), Claimant, his captain and his public adjuster Philip Melilo. [2] On February 6, 2013, Alcus submitted an appraisal report to **ACE**, which estimated the cost of repairing the Vessel to be $ 271,285.72. [3]

In late February 2013, following the receipt of Alcus's estimate, Claimant's public adjuster requested that the Vessel be re-inspected by a mutually agreed third party. The parties subsequently agreed to bring in Brewer's Pilot's Point Marina. On March 4, 2013, a second joint inspection was held, at which Claimant, his captain and his public adjuster were in attendance. Alcus subsequently obtained Brewer's Pilot's Point Marina's quote of March 28, 2013, which estimated the cost of repairing the Vessel to be $ 316,968.51. [4] On April 5, 2013, **ACE** sent that estimate to Claimant's public adjuster.

On April 25, 2013, Claimant's email advised **ACE** that Brewer's repair estimate of March 28, 2013 was missing repair items that had been agreed upon during the second joint inspection. On April 30, 2013, Brewer provided a revised repair estimate, which included various items that had been added at the request of Claimant's public adjuster, including $ 64,000 to refurbish the Vessel's entire superstructure. On May 3, 2013, **ACE** informed Claimant that it would only be providing coverage for loss-related repairs and that any work completed beyond the scope of coverage would be at Insured's expense. **ACE** thereafter offered to settle Claimant's loss for $ 320,000, minus the policy deductible, which represented an increase from the initial estimate of $ 271,285.71. That offer was rejected by Claimant.

==Nonetheless, on May 17, 2013, **ACE** issued a check to Claimant in the amount of $ 299,768.51, which represented the revised estimated repair cost of $ 316,968.51 less the policy deductible of $ 17,200. **ACE** claimed that the net amount of $ 299,768.51 represented "a fair and reasonable settlement for the loss..." and further maintained that "the damages in this amount are not in dispute." That offer was rejected by Claimant's public adjuster, although the check was subsequently cashed by Claimant.==

**ACE**'s email of May 17, 2013 also denied coverage for the $ 64,000 demanded to renew the Vessel's undamaged superstructure, as it was deemed to be "excessive, unnecessary and beyond the scope..." of Property Damage Coverage (Part A) of the policy. **ACE** also advised that it was making a good faith effort to resolve the claim and offered to round the $ 316,968.51 to an even $ 320,000 (less deductible), which the public adjuster had already rejected.

---

[1] Exhibit G.

[2] Claimant asserts that Mr. Melillo was an adjuster who had been assigned to assess damage caused by "Sandy" to Claimant's waterfront business facility at Woodbridge, N.J. Upon learning of the loss to the Vessel, Melillo offered his assistance. However, Melillo soon realized that a marine surveyor was required and suggested to Claimant that one be hired. Upon the recommendation of a trusted yacht broker in Fort Lauderdale, FL, Matt Schmahl was subsequently hired. (Montecalvo Dec. P 3.)

[3] Claimant has challenged the date of the Alcus report (Exhibit H) as February 6, 2014, which was the date ascribed to it in Respondent's Reply Memorandum. However, the report is in fact dated February 6, 2013.

[4] Exhibit 1.

Case 0:24-cv-60161-WPD Document 17-3 Entered on FLSD Docket 04/17/2024 Page 4 of 19

Page 3 of 18

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company , As Respondent Under a Recre....

In the same email of May 17, 2013, **_ACE_** informed Claimant of his option to appeal **_ACE_**'s position internally and also alerted Claimant to the time bar clause contained in the insurance contract in the event that Claimant elected instead to exercise his other option to arbitrate the dispute.

On May 23, 2013, Claimant's public adjuster informed **_ACE_** that Claimant did not agree with **_ACE_**'s position and that Claimant was currently in the process of reviewing his options under the policy, as well as under the State of New Jersey Guidelines. In the same email, **_ACE_** was requested to forward a check for the undisputed portion of the claim.

On September 24, 2013, Claimant replaced his public adjuster and retained TMS National, a Texas surveyor (Matt Schmahl.) On September 26, 2013, Claimant sent a letter to **_ACE_** requesting **_ACE_** to pay for TMS to conduct another (third) inspection of the Vessel. The same letter contained Claimant's reservation of "all rights available in the insurance policy and under law." [5] **_ACE_** declined, claiming that TMS was a marine surveyor and not a repair contractor.

On March 6, 2014, a third joint inspection was conducted on the Vessel with a mutually agreed third party, reputable vessel repair service -- Steve's Marine. Claimant, Steve's Marine, Alcus Marine and TMS were all in attendance.

Claimant's letter of May 16, 2014 to Marsh & McLennan Agency complained about the treatment of his claim by **_ACE_**. [6] On June 13, 2014, **_ACE_** agreed to provide Claimant with a supplemental payment in the amount of $ 74,523.94 and a check for that amount was subsequently issued to Claimant on September 13, 2014.

On September 24, 2014, **_ACE_** advised Claimant that the hull value would be reduced to $ 125,000 with a return premium of $ 2,269. **_ACE_** advised that the basis for the revaluation was the then current condition of the Vessel in an unrepaired state with damage from the claim submitted in 2012 (JY12J0557733) and further stated that the new hull amount was determined by taking the current market value of the Vessel (good condition) of $ 500,000 and subtracting the approximate $ 375,000 claim payout on the claim (JY12J0557733.) Moreover, **_ACE_** requested Claimant to undertake immediate repairs to the Vessel and to demonstrate noticeable progress of those repairs by 90 days prior to the May 9, 2015 renewal date. **_ACE_** further requested Claimant to provide **_ACE_** with a statement from the yard on the Vessel's progress by February 9, 2014 (*sic*) and that, if the progress was unsatisfactory, the policy would be non-renewed effective May 9, 2015. [7]

On October 21, 2014, Claimant rejected the supplemental payment and requested an extension of time to seek settlement of the claim. **_ACE_** declined the request.

On December 10, 2014, Claimant demanded arbitration for the October 29, 2012 loss.

On December 30, 2014, Claimant filed a petition to compel arbitration in the U.S. District Court, District of New Jersey. At that time **_ACE_** stipulated to arbitrate without waiving its defenses of untimely demand.

On February 11, 2015, Claimant returned **_ACE_**'s check for $ 74,523.94 because it contained the note "Full and Final Settlement for IV Damage."

**Proceedings**

I was appointed jointly by the parties as sole arbitrator on February 9, 2015 and the parties accepted my disclosure on that date.

In a conference call on February 19, 2015, the parties agreed to a Submission Schedule concerning the threshold issue of whether or not Owner's claim is time barred.

---

[5] Exhibit L.

[6] Exhibit 14.

[7] Exhibit 19.

Case 0:24-cv-60161-WPD   Document 17-3   Entered on FLSD Docket 04/17/2024   Page 5 of 19

Page 4 of 18
In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company, As Respondent Under a Recre....

On March 9, 2015, **ACE** submitted a Memorandum of Law in Support of Motion to Dismiss, with supporting exhibits. On March 23, 2015, Claimant submitted its Memorandum of Law in Opposition to Respondent's Motion to Dismiss Claim, with supporting exhibits. **ACE** submitted its Reply, with supporting exhibits, on April 2, 2015. Claimant submitted a Sur-Reply on April 13, 2015 and **ACE** submitted its Sur-Reply on April 23, 2015.

On May 7, 2015, the parties were advised that the proceedings were declared closed and that an award would issued on the basis of the evidence before me at that time.

**Relevant Clause**

**ARBITRATION**: Any controversy or claim, whether based on contract, tort, statute or other legal or equitable theory (including but not limited to any claim of fraud, misrepresentation or fraudulent inducement, arising out of or related to this policy, the interpretation, enforcement or breach thereof, or the handling of any claim involving this policy), shall be referred to and settled by arbitration in accordance with the then current CPR Institute for Dispute Resolution Rules for Non-Administered Arbitration and this provision. The arbitration shall be governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Implemented at 9 U.S.C. §§ 201-208, or if said Convention shall be held not to be applicable, by the United States Arbitration Act, 9 U.S.C. §§ 1-16, to the exclusion of any provision of state or other law inconsistent therewith or which would produce a different result, and judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction. The arbitration shall be held in the State appearing in your address as contained upon the Declaration Page and in accordance with the following procedure:

   a. You and **we** will agree on a single arbitrator to decide the dispute, whose fee will be paid fifty percent (50%) by **you** and **us**;

   b. If **you** and **we** are unable to agree on a single arbitrator, **you** and **we** will each appoint an arbitrator and those two (2) arbitrators will appoint a third arbitrator. The three (3) arbitrators will decide the dispute by a majority vote. **You** will pay the fee of the arbitrator that **you** appoint. **We** will pay the fee of the arbitrator that we appoint. You and we will each pay fifty (50%) percent of the fee charged by the third arbitrator.

   c. **You** and **we** will each pay fifty (50%) percent of the fee charged by the American Arbitration Association to coordinate the arbitration.

   d. The request for arbitration must be filed within one (1) year of the date of loss or damage; and

   e. **We** may arbitrate the amount of your loss or damage without waiving our right to determine coverage or a lack of coverage for the loss. [8]

**Arguments**

*ACE's Arguments*

Respondent argues that Claimant's demand is untimely as the insurance contract between the parties requires that arbitration commence "within one (1) year of the date of loss or damage." Moreover, the mandate is clear and straightforward and the contract's time limitation clause contains no exception or tolling provision which might extend the stated one-year period for damage which has not been discovered. Therefore, since the alleged loss took place on October 29, 2012, any request for arbitration had to be made within one year, *i.e.* before the first anniversary date of October 29, 2013.

Citing authorities, **ACE** maintains that it is well-established that time limits in insurance policies are enforceable under New York Law. In addition, CPLR § 201 specifically permits parties to prescribe "by written agreement," a time to

---

[8] In the conference call of February 19, 2015, and notwithstanding the references to the CPR Institute for Dispute Resolution Rules for Non-Administered Arbitration and the American Arbitration Association, the parties agreed to the Submission Schedule referred to above as governing only the issuance of any award on the threshold issue of time bar in this proceeding.

Case 0:24-cv-60161-WPD   Document 17-3   Entered on FLSD Docket 04/17/2024   Page 6 of 19

Page 5 of 18

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company , As Respondent Under a Recre....

commence an action that is "shorter" than the general statutes of limitations and that such limits are consistent with public policy. The New York Court of Appeals explained "such an agreement does not conflict with public policy, but, in fact, more efficiently secures the end sought to be attained by the statute of limitations." *John J Kassner & Co., Inc. v. City of N.Y.*, 46 N.Y.2d 544 (1979). The Court of Appeals has repeatedly enforced time limits set forth in insurance policies. See *Gilbert Frank Corp. v. Federal Ins. Co.*, 70 N.Y.2d 966, 967 (1988) (strictly enforcing 12-month limitation period in policy against insured despite the fact that the insurer and insured negotiated the claim before and after the limitations period expired). *Blitman Construction Corp. v. Ins. Co. of North Amer.*, 66 N.Y.2d 820, 822 (1985) ("an insured is bound by the terms of the contract"); *Flans v. Federal Ins. Co.*, 43 N.Y.2d 881 (1978). In each of these actions, the insurance contract at issue prescribed a one-year contractual time limit to bring an action against the insurer. Likewise, the Court of Appeals granted summary judgment to the insurer, even where insureds tried to create issues of fact.

**ACE** contends that it is likewise well-established that the existence of communications between an insurer and its insured, a continuing investigation and even a settlement offer, whether "before or after the expiration of a policy limitation," does not render a policy limitation unenforceable *Gilbert Frank*, 70 N.Y.2d at 968. Therefore, it is argued, it is irrelevant that **ACE** and the insured communicated before or after the expiration of the one-year period.

Respondent also maintains that with specific respect to marine insurance policies, courts have repeatedly granted summary judgment enforcing one-year time limits pursuant to clear contract language. In *Acadia 1 Corp. v. Ins. Co. of North America, et al*, 2012 AMC 2088 (Sup. Ct. New York Co. 2012), the court held that the insured's claim that the vessel repairs were negligently performed was untimely under the parties' insurance contract issued by **ACE** mandating that "with respect to any claim or loss to insured property, any suit against must commence within one (1) year of the date of loss or damage." Relying on the clear language of the contract, the court strictly construed the date of loss as being October 2007, the time of the vessel's negligent repairs, not the date that the insurer formally denied coverage in March 2010. As the insured's action was not commenced until October 27, 2010, the court granted summary judgment in favor of the insurer.

In a similar case, *Mele v. Mutual Marine Office*, 1992 A.M.C. 1717 (Sup. CT Suffolk Co. 1991), the court granted summary judgment to the insurance carrier after a sailing vessel was damaged in a hurricane, holding that in view of the twelve-month policy limitation "it was incumbent upon plaintiff to commence an action within twelve months of the loss." In *Stony Brook Marine Transportation Corp. v. Wilton*, 1997 WL 538913 (E.D.N.Y. 1997), the Court granted summary judgment to the insurer based on a policy limitation that required any action to be brought within twelve months of the denial of coverage, reasoning that "since the insurance contract required plaintiff to file the instant litigation within twelve months after defendant's October 1, 1993 claim denial, and plaintiff did not commence this action December 22, 1994, plaintiff is barred from maintaining its present claim by the twelve month (12) contractual limitations contained in the Hull and Machinery insurance contract." That Court also found that the insurer's investigation of a claim after the expiration of the policy limitation period did not waive the limitation. In *Helios Trading Corp. v. Great Amer. Ins. Co.*, 1993 A.M.C. 2157 (S.D.N.Y. 1993), the Court reached the same conclusion.

Similarly, In New Jersey, a one-year time limitation like the one contained in the **ACE** policy is binding and enforceable. See *Eagle Fire Protection Corp. v. First Indem. Of America Ins. Co.*, 145 N.J. 345, 355 (N.J. 1996) ("this Court has routinely upheld contract provisions that create a one-year time limitation in which Claimants may bring suit.") See *Kelly v. Travelers Ins. Co.*, 2008 WL 5025020 (N.J. Sup. Ct. App. Div. 2008) (finding no ambiguity in a yacht insurance time limitation clause with identical language to the applicable policy here). *Kelly v Travelers* involved a contract for yacht insurance containing a time limitation clause with nearly identical language to that contained in the contract of the parties here. The insured brought suit against its insurer over two years after the date of loss. The trial court held that the claim was time barred pursuant to the parties' insurance contract and granted summary judgment in favor of the insurer. The Appellate Court affirmed, holding that the insured's suit against his insurer, filed in 2007, was barred by a one-year time limitation clause contained in the parties' contract of insurance because it had been brought over a year after the date the insured's vessel suffered damages. See *id* at 4. Indeed, New Jersey law strictly enforces the express terms of insurance contracts and, moreover, will not "write for the insured a better policy of insurance than the one purchased." See *Longobardi v. Chubb Ins. Co, of New Jersey*, 121 N.J. 530, 537 (N.J. 1990) (citing *Walker v. Rogge, Inc. v. Chelsea Title and Guar. Co.*, 116 N.J. 517, 529 (N.J. 1989)).

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company, As Respondent Under a Recre....

In conclusion, **ACE** contends that the parties entered into a binding, enforceable agreement to limit the time for demanding arbitration to one year from October 29, 2012, the date of the loss. Moreover, Claimant was well aware of this time-bar provision and yet let it lapse [9]. Indeed, Claimant waited until December 10, 2014, over two years after the loss before requesting arbitration on that date. Therefore, pursuant to the parties' contract, the claim is time barred.

Claimant's Response

I The Part of the Policy's Arbitration Clause Which Relates to the Time to Commence Proceedings Is Ambiguous and Thus Cannot Be Enforced.

Claimant asserts that the use of the terms "[a]ny controversy or claim" and "loss or damage" in the arbitration clause is ambiguous and unclear. Moreover, **ACE**'s reliance on those phrases in that clause does not account for controversies or claims that arise after the "loss or damage," which is the case here and thus the clause is unclear and unambiguous (sic). Furthermore, **ACE** wrote the policy and could have, and should have, been more coherent and articulate in its drafting of the arbitration provision in its policy. **ACE**'s reading of its poorly worded arbitration clause is unreasonably narrow. A more reasonable interpretation is that the time to demand arbitration begins to run when a controversy or claim concerning the handling of a loss has arisen.

Claimant maintains that as insurance policies are contracts of adhesion, they are subject to special rules of interpretation. *Meier v. New Jersey Life Ins. Co.*, 101 N.J. 597, 611 (1986). More importantly, insurance policies are construed liberally in the insured's favor in a manner that recognizes the reasonable expectations of the insured, *Zuckerman v. Nat. Union Fire Ins.*, 100 N.J. 304, 320-21 (1985), and to the end that coverage is afforded "to the full extent that any fair interpretation will allow." *Kievit v. Loyal Protective Life Ins. Co.*, 34 N.J. 475, 482 (1961) (quoting *Danek v. Hommer*, 28 N.J.Super. 68, 76 (App.Div.1953), aff'd 15 N.J. 573 (1954). Any interpretation should be "particularly vigilant" to ensuring "conformity to public policy and principles of fairness." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992). An "insurance [policy] must be interpreted by considering the agreement as a whole, and whenever possible, meaning must be given to all of its parts." *Josephson, Inc. v. Crum & Forster Ins. Co.*, 293 N.J. Super. 170, 216, 679 A.2d 1206 (App. Div. 1996).

Therefore, Claimant contends that, here, any fair interpretation of the arbitration clause must give separate meanings to the terms "controversy and claim" and "loss or damage," thus favoring Mr. Montecalvo's interpretation of the clause.

Claimant argues that it is settled law that when an ambiguity exists in an insurance policy, which is clearly the case here, it must be resolved in favor of the insured *Cruz-Mendez v. ISU/Ins. Servs.*, 156 N.J. 556, 571 (1999). Therefore, **ACE** cannot argue otherwise because it is likewise settled law that even if a particular phrase or term is capable of being interpreted in the manner sought by the insurer, "where another interpretation favorable to the insured reasonably can be made that construction must be applied." *Ellmex Const. Co., Inc. v. Republic Ins. Co.*, 202 N.J. Super. 195, 204 (App. Div. 1985), cert. denied, 103 N.J. 453 (1986); *Lundy v. Aetna Cas. & Sur. Co.*, 92 N.J. 550, 559 (1983) ("Where the policy language supports two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied.")

Claimant further contends that the arbitration provision clearly contemplates claims not strictly relating to loss or damage, yet ties the arbitration of such claims to one year from the Kelly date of loss, even if the controversy or claim is unknown or inchoate -- this interpretation is inherently ambiguous. Moreover, the average policy holder could not reasonably be expected to understand that he would have to demand arbitration to preserve a claim or controversy that has not arisen or that he has not yet aware of. Therefore, as it would be unfair in the present circumstances to hold him to such an ambiguous requirement, his interpretation of the arbitration clause should be applied.

II In the Alternative, by Its Conduct **ACE** Waived the Limitation Period and Should Be Estopped from Raising the Limitation Period As a Defense.

---

[9] Exhibit "D" -- Insured's letter of October 21, 2012.

Case 0:24-cv-60161-WPD   Document 17-3   Entered on FLSD Docket 04/17/2024   Page 8 of 19

Page 7 of 18

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company, As Respondent Under a Recre....

Claimant asserts that even if the one-year time to commence arbitration began to run as of the date of the physical damage to the yacht, **ACE**'s extensive communications with Claimant and subsequent re-opening of the adjustment, twice, to address the supplemental damage and the engine damage is sufficient to show that **ACE** intended to waive the limitation period, or should be estopped from relying on the limitation period as a defense.

In that regard, Claimant cites authorities that communications or settlement negotiations between an insurer and insured before the expiration of a limitations period contained in a policy has been held to be sufficient to prove the insurer intended to waive the limitation and should be estopped from raising the time limit as a defense. See *e.g.*, Mass v. Great American Ins. Co., 28 A.D.2d 897-898 (N.Y. App. Div. 2d Dep't 1967). Another court ruled that waiver will be found where the beneficiary of the limitations period intended to waive its protection. *Fox-Knapp Inc. v. Employers Mut. Cas. Co.*, 725 F.Supp. 706, 710 (S.D.N.Y. 1989). It also found that waiver represents an intentional relinquishment of a known right and although it is not lightly presumed, a clear manifestation of intent by the insurer's unequivocal act will relinquish the protection of the contractual limitations period *Id.* In *Graziane v. National Surety Corporation*, 477 N.Y.S. 2d 814 (3rd Dept. 1984), a triable issue of fact was found regarding whether an insurer waived a twelve month period of limitations where there were, among other things, extensive and lengthy negotiations and an aborted settlement. *Id.* at 814.

Claimant maintains that estoppel is appropriate where an insured can demonstrate that the insurer by its conduct or otherwise intended to lull the insured into inactivity to induce him to continue negotiations until after the expiration of the time within which an action could be maintained. See *Triple Cities Constr. Co. v. Maryland Cas. Co.*, 4 N.Y.2d 443 (1958). In *Mass, supra*, the plaintiff insured alleged he "was repeatedly promised by agents for the [insurer] that the loss would be adjusted, without litigation." Further, the insurer did not deny that its adjuster kept reaffirming the insurer's offer, made repeated demands for proofs of loss as a condition of payment and warned against the risk of failure to supply such proofs. The court found that there was a triable issue as to whether insurer, by its conduct, had actually misled or lulled the insured into inactivity and thus had waived the time limit and was equitably estopped from pleading the statute. *Id.*

First, Claimant asserts, in an effort to obtain dismissal on the basis of the limitation period, **ACE** has presented a grossly incomplete and one-sided factual record. As explained above, **ACE**'s communications with him prior to the expiration of the limitation period must be inferred to manifest intent on the part of **ACE** to waive the limitation. From the date of the loss up to October 24, 2014, **ACE** and Claimant had extensive negotiations regarding the adjustment of the claim and it was not until October 24th that a controversy arose between the two. To dismiss Mr. Montecalvo's claim on the basis of an incomplete record before us, when inferences of waiver and estoppel are so likely, would be highly prejudicial to him. Therefore, before a motion to dismiss is taken under consideration, Mr. Montecalvo should be given the opportunity to develop the factual record fully through document disclosures and testimony.

Claimant argues that, as it also can be reasonably inferred that the pattern of dealing between the parties was such that **ACE** intended by its conduct and otherwise, to keep him negotiating the adjustment of the loss beyond the one-year limitation, **ACE** should, therefore, be stopped from raising the time limitation as a defense to his claim. It is asserted as an example **ACE**'s initial claim payment provided that it was offered as "a fair and reasonable settlement," but not a final settlement. There were also several correspondences from **ACE** which left open the possibility that further adjustments could be made in the future; and, in fact two supplemental adjustments were made.

Moreover, Claimant contends that from the incomplete factual record presently available, it can reasonably be inferred that there is an issue ripe for arbitration in that **ACE** intended to waive the protection of the contractual limitations period contained in the policy. As an example, **ACE** referred Mr. Montecalvo to an "Internal Appeal Procedure" to resolve any dispute he had about the proposed allowed claim amount. However, that procedure does not specify any time limit for bring a claim. Furthermore, after admitting that its surveyor failed to include agreed upon repairs in the first estimate and also to note damage to the Vessel's engines caused by the storm, **ACE** subsequently reopened the adjustment, twice, and offered to make an additional claim payment after the expiration of the limitation period.

Accordingly, Claimant asserts that, viewing the presently known facts in the light most favorable to him, it is reasonable to infer that **ACE**'s actions rise to the level of waiver and estoppels as a matter of law.

Case 0:24-cv-60161-WPD   Document 17-3   Entered on FLSD Docket 04/17/2024   Page 9 of 19

Page 8 of 18
In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company , As Respondent Under a Recre....

III <u>The Cases Relied on by **ACE** Are Inapplicable, Distinguishable or Favor Claimant</u>.

Claimant argues that none of the cases cited by **ACE** deal with an arbitration provision that has the same language as the arbitration provision at issue here and contends below how those cases are easily distinguishable.

    1. *Acadia* -- this matter dealt with the denial of coverage based on a claim associated with inadequate repairs not denial of coverage for the initial loss. In *Acadia* the "loss date" was not in controversy. The "loss date" is not an issue here, rather when the "controversy or claim" arose is the issue.

    2. *Blitman* -- plaintiff did not argue that the one-year limitation period was invalid or that there was a triable issue concerning waiver or estoppel.

    3. *Eagle Fire* -- this matter involved a subcontractor's claim against a surety who guaranteed payment to subcontractors for work done at the direction of the general contractor. The issue was the interpretation of the term "cease work." Plaintiff prevailed because its interpretation of "cease work" was a reasonable interpretation.

    4. *Alan Flats* -- plaintiffs commenced a declaratory judgment action against the insurer for coverage for damage to their home. They commenced two prior actions based on the same occurrence. The court in the first action found the plaintiffs moved to Israel, failed to appear for an examination before trial, and repeatedly delayed the proceedings. Their action was dismissed. The case relied on by **ACE**, which was the third action filed by plaintiffs, was filed seven years after the loss and was dismissed as untimely, among other reasons.

    5. *Gilbert Frank* -- plaintiff commenced a lawsuit seeking recovery under a policy for a loss associated with a burglary. The court determined the claim was filed untimely. The court specifically noted "since the conduct complained of occurred subsequent to expiration of the limitations period, Plaintiff could not have relied on the conduct in failing to time commence its action." In the instant matter, there were numerous communications and conduct by **ACE** that occurred prior to the expiration of the limitation period.

    6. *Helios Trading Corp.* -- similar to *Gilbert Frank* there was no conduct which occurred prior to the expiration of the limitation period.

    7. *Kassner* -- plaintiff provided services to the City of New York and submitted an itemized statement. The City of New York refused to pay for the amount of the services. For over six years plaintiff did nothing to collect any part of its final payment. The Kassner Court held

> ...once the audit was completed and the plaintiff was informed of the results, the cause of action accrued (citation omitted). The breach if any occurred at this point because the Controller...unequivocally refused to pay the full amount demanded and allegedly due on the contract.

> *Kassner* supports the Claimant's position that the controversy or claim between the Claimant and **ACE** did not accrue until **ACE** unequivocally refused to pay the full amount of the damages -- October 24, 2014.

    8. *Kelly* -- the insurer moved for summary judgment asserting the action was not commenced within one year of the loss. The clause at issue stated "no action will be brought against us unless there has been full compliance with all policy provisions; and such action is started within one year after the loss or damage occurs." The plaintiff argued that the policy was ambiguous because it failed to specify who must be in "full compliance with all policy provisions." The court believed that plaintiffs argument was nonsensical, and that plaintiff was clearly the party who had to be in full compliance with the policy provision.

    9. *Longobardi* -- this case required the court to determine whether an insured's post-loss misrepresentation to his personal-property insurer justifies denial of coverage. The court held that the insured's lies were sufficient for the insurer to nullify the policy. The jury found that the insured knowingly made material false statements during his examination under oath in an effort to hinder and mislead the insurer. This case has absolutely no application here.

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company, As Respondent Under a Recre....

10. *Mele* -- plaintiff sailboat owner failed to sustain his burden of proving that the marine insurer should be estopped from raising the policy's one-year time for suit provision as a defense. The court held, as they did in *Gilbert Frank* and *Helios*, that "[i]nasmuch as the conduct complained of occurred subsequent to the expiration of the limitation period, Plaintiff could not have relied on the conduct in failing to timely commence his action." The court also noted that there was no evidence that any communications by defendant occurred after the one-year time period ran. Here, there were many communications by **ACE** before and after the alleged one-year time period ran.

11. *Stony Brook Marine Transportation* -- this case is clearly distinguishable because the clause at issue identified when causes of action against the underwriter accrued. The clause specifically stated "no suit, action or proceedings brought by the assured against the underwriters for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within 12(12) (*sic*) months after the Underwriters have denied liability for payment of claim."

Claimant argues that, based on the above, **ACE**'s motion to dismiss Mr. Montecalvo's claim as untimely should be denied.

Respondent's Reply

I <u>Claimant's Action is Time Barred Under the Clear and Unambiguous Language of the Contract</u>

Respondent argues that Claimant has not presented one case to support his argument that the contract's time limitation provision was ambiguous. Indeed, none of the cases cited in Mr. Montecalvo's brief even deal with the interpretation or enforcement of time-limitation clauses and has offered no affidavits from his various representatives (the public adjuster and the insured's other representative, Lee Becker). Rather, Claimant simply and subjectively declares he read 'claim or controversy' as being entirely independent of the 'date of loss'. But nowhere does the policy state that the time bar runs from the date the 'claim or controversy' arises. [10]

Moreover, Claimant's law offers no solace. Claimant cites to *Vorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992), which explains that an insurance contract should be read as a whole and "meaning must be given to all its parts." What is most transparent about Claimant's argument is that he relies on the "Arbitration" provision's opening paragraph which identifies all the different categories of 'controversies or claims' that are subject to arbitration. However, Claimant sidesteps the clause governing the arbitration "procedure," which states in pertinent part as follows:

The Arbitration shall be held...in accordance with the following procedure:

    d. The request for arbitration must be filed within one (1) year of the date of loss or damage; and we may arbitrate the amount of your loss without waiving our right to determine coverage or a lack of coverage for the loss. [11] (emphasis removed)

==This clause unambiguously states that the request for arbitration must be filed within one (1) year of the date of loss or damage. Reading the provision as a whole, (even as Claimant suggests is appropriate), the first part of the arbitration clause sets forth the list of the types of 'claims and controversies' which may arise, while the second part of the arbitration clause lays out the 'procedures' for pursuing same. There is no ambiguity.==

**ACE** asserts that Claimant also argues that his 'claim' arose after the date of loss and, thus, he is not bound by the one-year time limitation period. First, the underlying 'claim' is directly related to the date of loss, as Mr. Montecalvo filed an official "Claim Notice" with **ACE** on November 21, 2012 specifying the date of loss as occurring October 29,

---

[10] See Respondent's Brief, Exhibit C.

[11] See Respondent's Brief, Exhibit C.

Case 0:24-cv-60161-WPD   Document 17-3   Entered on FLSD Docket 04/17/2024   Page 11 of 19

Page 10 of 18

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company, As Respondent Under a Recre....

2012.[12] Second, to accept Claimant's argument, would wreak havoc on the contract provision at issue, allowing an insured to refuse to accept anything less than the full policy proceeds (or the demanded amount), and continue sending out surveyors and emails requesting inspections, thereby stringing out an unlimited extension of time to commence legal proceedings. This would render the limitation clause illusory. For example, under Claimant's rationale, the arbitration would not be required to be filed until October 24, 2015, three years after the loss.[13]

Provisions in an insurance contract should not be read in a way that would render them meaningless. See *County of Columbia v. Continental Ins. Co.*, 83 N.Y. 2d. 618 (1994). Not only did ACE remind Claimant of the one-year limitation on May 17, 2013, but Claimant acknowledged his understanding of same in an email dated May 23, 2013. Indeed, Claimant thereafter requested an extension of time to seek arbitration on October 21, 2014. Clearly, there was no subjective confusion.

Finally, Claimant's lack of legal support is telling. Courts have consistently enforced time bar language similar to that contained in Claimant's insurance contract. For instance, in *Klawiter v. CGU/ONEBEACON Ins.*, & 10 N.Y.2d 756 (App. Div. 4th Dept. 2006), the plaintiff made a very similar argument, alleging that the time limitation clause in the policy requiring suit to be brought "within two years after the date of loss" did not apply because plaintiffs 'claim' against the insurer arose after the date of the loss. The court rejected this argument explaining, "contrary to the contention of plaintiffs, the date of loss is the date of the catastrophe insured against not the accrual date of their cause of action against defendant." See also *Roberts v. New York Property Ins. Underwriting Ass'n.*, 677 N.Y.S.2d 621 (App. Div. 2nd Dept. 1998) (rejecting plaintiffs argument that 'date of loss' as used in insurance policy was ambiguous because "the phrase has been held to refer to the date of the catastrophe insured against, and not the date of the completion of the process to determine the loss").

Accordingly, ACE maintains, the contractual arbitration clause at issue is clear and unambiguous not only as a matter of law, but also as understood by Claimant as confirmed by his contemporary emails.

II <u>There Has Been No Waiver or Grounds for Estoppel</u>

ACE argues that contrary to Claimant's assertion, it cannot be reasonably inferred (or inferred at all) that ACE 'intended' to waive the protection of the imitations period. "Waiver is an intentional relinquishment of a known right and should not be lightly presumed." See *Acadia 1 v. I.N.A.*, 2012 AMC 2088 (Sup. Ct. New York County 2012) (involving a marine insurance policy). At no point did ACE intend to waive its rights to the time limitation provision, as evidenced by its explicit inclusion in the May 17, 2013 email correspondence to Mr. Montecalvo.[14] Once an insurer shows that an insured's legal action has been filed after the expiration of a time limit clause contained in the insurance contract, the insured bears the heavy burden of proving that the time limitation clause is invalid. See *Gilbert Frank Corp. v. Federal Ins. Co.*, 70 N.Y.2d 966 (1988). Claimant has not met this heavy burden.

Claimant cites to *Mass v. Great American Ins. Co.*, 28 A.D.2d 897 (N.Y. App, Div. 2nd Dept. 1967) for the preposition that negotiations between an insurer and an insured are sufficient "to waive the limitation defense." However, the *Mass* decision involves a fire insurance policy and the holding is a mere one paragraph long (and a dissent), none of which contains the findings urged by Claimant. Indeed, with no recitation of facts, the court simply stated that a trial on the issues was warranted. Here, the arbitrator (not a jury) is the sole arbiter and the contemporaneous emails from the insured show absolutely no confusion about the arbitration provision. Similarly, the law is settled that Claimant's legal argument has no merit.

Claimants other cases are equally unavailing. The only cases cited by Claimant which deal with settlement negotiations between an insured and an insurer in the context of a time limitation clause are *Fox-Knapp Inc. v.*

---

[12] See Exhibit G, Claim Notice.

[13] See Claimant's Opposition Brief, (p.7, P 5).

[14] See Exhibit F, Affidavit of Paul Herzner, P9. ACE refers to Exhibit 7 of Claimant's brief concerning misleading reference to section d of the arbitration procedures. See Respondent's Brief, Exhibit A.

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company, As Respondent Under a Recre....

*Employers Mut. Cas. Co.*, 725 F.Supp. 706 (S.D.N.Y. 1989) and *Graziane v. National Surety Corp.*, 477 N.Y.S.2d 813 (3rd Dept. 1984). Quite the opposite, in *Fox-Knapp Inc.*, the court held that the insurer had not waived its right to assert the time limitation clause in the policy despite continuing to investigate the claim and conducting examinations under oath following expiration of the limitation period. In *Graziane*, the insured had commenced an untimely suit and, rather than file a motion to dismiss the action as time barred, the insurer engaged in five years of settlement negotiations with the insured. The case was then placed back on the Court's docket after the insurer backed out of the settlement and, on the eve of trial, the insured filed a motion for summary judgment on the issue of untimeliness. See *Graziane, supra*. In contrast, **ACE** preserved its right to assert the limitation defense prior to Claimant's filing the petition to compel arbitration. The first paper filed in this arbitration was **ACE**'s motion to dismiss the matter as untimely. To be sure, **ACE** did not respond to commencement of this action by engaging in settlement with Claimant, unlike *Graziane*.

In *Acadia 1 v. I.N.A.*, plaintiff vessel owner sued the marine insurer for property damage allegedly resulting from inadequate repairs to a vessel from a covered loss in 2005. The lawsuit was not filed until 2010. The insurer moved to dismiss based on the one-year insurance contract's limitation period. The insured argued that the insurance company waived its right to assert the one-year limitation period because it had provide coverage and the dispute was over faulty repairs and additional repair costs. The court held that any intentional relinquishment of the contractual limitation period "must be unmistakably manifested, and is not to be inferred from a doubtful or equivocal act." The insurer's motion to dismiss was granted by the federal judge on summary judgment. See *Acadia 1 v. I.N.A., supra*. Claimant attempts to distinguish *Acadia 1 v. I.N.A.* in that it involved a claim for additional damages relating to negligent repairs. Here, however, Claimant has not made any repairs to his vessel which would allow him to even attempt to benefit from this argument. All of Claimant's damages arise from the October 29, 2012 date of loss.

Claimant facetiously asserts that **ACE**'s May 17, 2013 email suggested Claimant use an 'Internal Appeal Procedure' if he wished to dispute the claim. Claimant argues that since the internal appeal process doesn't specify a time limit for bringing a claim, this means **ACE** somehow waived the limitation defense. This is wholly without merit. The internal appeal procedure is a state-mandated process giving an insured the option to have a panel composed of the insurance company employees conduct a second review of an insured's disputed claim. See N.J.S.A. 17:29E-9, *Property, casualty or life insurers; internal appeals procedure required*. **ACE** does not dispute that Claimant could have pursued this course of relief for his claim. Mr. Montecalvo chose not to. [15] In the alternative, Claimant could have elected to arbitrate his claim with a neutral arbitrator, so long as the request for arbitration was made within one-year of the date of loss. Both of these remedies, along with the procedures for invoking them, were included and explained to Claimant in **ACE**'s May 17, 2013 email. [16] Claimant understood all of this. Indeed, Claimant's representative responded to **ACE**'s May 17, 2013 email with: "we do not agree with your position and we are currently in the process of reviewing our options under the policy as well as the State of New Jersey Guidelines. In the meantime, please forward a check for the undisputed portion of the claim." [17] That said, Claimant elected to forfeit his right to an internal review of **ACE**'s decision and instead hired yet another surveyor to once again inspect the damages arising from the October 29, 2012 loss, while at the same time allowing the arbitration clock to run out.

Claimant also argues that that **ACE** should be estopped from asserting the time limitation defense because "it is unfair" to him. This plea is certainly not a legal argument and it is curious that under the circumstances outlined in the chronology and affidavits, it is Mr. Montecalvo who is asking for 'fairness'. From the date of the loss, it became apparent that Claimant was looking to have his vessel declared a constructive total loss which would have entitled him to the full property limits. [18] As each repair estimate continued to reveal that the Vessel was not a constructive total loss, Claimant became more demanding, insisting that **ACE** once again reevaluate his claim and conduct additional joint vessel surveys while, at the same time, Claimant apparently did nothing to care for the Vessel or

---

[15] This statute and all newly cited cases in this brief are enclosed.

[16] See Respondent's Brief, Exhibit A; See Exhibit F, Affidavit of Paul Herzner, P9.

[17] See Exhibit K, email dated May 23, 2013.

[18] See Exhibit E, Affidavit of Ronald Alcus, P5.

Case 0:24-cv-60161-WPD   Document 17-3   Entered on FLSD Docket 04/17/2024   Page 13 of 19

Page 12 of 18

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company , As Respondent Under a Recre....

initiate any repairs. **ACE** re-evaluated Claimant's loss each time as a mere accommodation. Despite persistently pleading for **ACE** to engage in additional negotiations, Claimant now tacks and complains about **ACE**'s concession to his demands. Claimant cannot have it both ways. Indeed, it is well settled that "evidence of communications or settlement negotiations between insured and its insurer, either before or after expiration of limitations period contained in policy, is not, without more, sufficient to prove that insurer waived or was estopped from asserting limitation period." See *Gilbert Frank Corp. v. Federal Ins. Co., supra*. Claimant's attempt to distinguish *Gilbert Frank* on the basis that the actions complained of in that case occurred solely after the expiration of the limitations period is in direct contravention of the Court's holding. Indeed, Claimant has provided no support whatsoever for the argument that **ACE**'s good faith dealings were unfair to him because:

> "an insurance company's actions with respect to proof of loss and investigation of a claim pursuant to contract are so unrelated to the insurer's position towards the contract limitations period that no reasonable inference can be drawn regarding the solely from the former. Thus it makes no difference in this case that defendant continued its investigation and granted plaintiff extensions on filing proof of loss even after the limitations period expired." *Arkin-Medo Corp. v. St. Paul Fire and Marine Ins. Co.*, 585 F.Supp. 11 (E.D.N.Y. 1982).

In conclusion, **ACE** argues that the standard language of the time limitation contained in the insurance contract has been consistently held unambiguous as a matter of law and enforced. **ACE** expressly did not waive any right to assert the limitation defense and raised it early in email exchanges. Claimant was required to demand arbitration within one year of October 29, 2012, yet prejudiced his own rights by delay and retention of additional experts and waiting until December 10, 2014 before instituting this action. Claimant has not met his heavy burden of proof on any of his arguments and, therefore, the matter should be dismissed with costs. [19]

Claimant's Sur-Reply

Claimant's Assertion of Supplemental Facts.

**ACE** claims "Claimant and Melillo immediately discussed totaling the vessel and claiming a constructive 'total loss' for receipt of the full policy proceeds." (Reply Brief page 1.) This statement is false. (Montecalvo Dec. P 4.) At no point in time, as reflected in the numerous correspondences with **ACE**, did Mr. Montecalvo claim that the Vessel was a total loss. [20] (Montecalvo Dec. P 2.) **ACE** further claims that "Upon learning this information, the marina owner discontinued estimating the repairs." (Reply Brief page 1.) The statement is false. A copy of the estimate provided by the marina owner is attached hereto as Exhibit 21. (Montecalvo Dec. P 6.)

**ACE** claims Mr. Montecalvo did not care for the boat after the loss. This statement is also false. The Vessel was winterized and shrink wrapped. (See Exhibits 22 & 23) (Montecalvo, Dec. P 7.)

As noted in the correspondence provided, Mr. Montecalvo pointed out that **ACE**'s estimates were inaccurate and incomplete. This led to additional inspections and admissions by **ACE** that they did not accurately adjust the loss. (Montecalvo Dec. P 8.) For example, Mr. Alcus and Brewers failed to include repairs in their initial estimates that had been agreed to. Mr. Montecalvo complained, which led to **ACE** issuing a supplemental repair estimate totaling nearly $ 75,000. (Montecalvo Dec. P 9.) This was not an insignificant error. In addition, **ACE** also failed to inspect the engines which had been submerged as a result of the storm. **ACE** agreed to another inspection and agreed to cover the costs to repair to (sic) the engines, which totaled nearly $ 100,000. (Montecalvo Dec. P 10.)

As clearly shown in the correspondence presented in the arbitration, from the date of the loss up until October 24, 2014, the loss was being adjusted. **ACE** agreed to re-inspect the Vessel an additional two times and issued two

---

[19] It bears noting that the insured is not without relief as in addition to the $ 299,768.51 the insured has already received and retained, **ACE** is fully prepared to promptly re-issue the $ 74,523.94 payment previously rejected by the insured.

[20] As previously noted it was **ACE** that established the Vessel was a constructive total loss. (Exhibit "19") **ACE** stated the market value of the Vessel was $ 500,000. Pilot Point, estimated that the repair costs totaled at least $ 510,836.34.

Case 0:24-cv-60161-WPD   Document 17-3   Entered on FLSD Docket 04/17/2024   Page 14 of 19

Page 13 of 18

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company , As Respondent Under a Recre....

supplemental repair estimates following the inspections in response to Mr. Montecalvo's legitimate concerns regarding **ACE**'s adjustment. (Montecalvo Dec. P 11.) Because **ACE** had responded to Mr. Montecalvo's concerns, there was no real controversy. It was not until October 24, 2014 (after nineteen months, 3 inspections, 2 supplemental estimates [totaling in excess of $ 150,000], and several times having to point out errors made by **ACE** in its adjustment of the loss) that Mr. Herzner of **ACE** wrote that the loss was settled and that **ACE** was closing its file. The loss was not settled and Mr. Montecalvo did not accept **ACE**'s final adjustment, which was far less than what **ACE**'s nominated repair yard estimated the damages were. (See footnote 2 herein.) (Montecalvo Dec. PP 12 & 13.)

In summary, Claimant asserts that a real controversy did not arise on October 24, 2014.

I <u>The Chronology of Events Establishes That No Controversy Existed Until October 24, 2014</u>.

**ACE** takes issue with the breadth of Mr. Montecalvo's facts, although fails to present any evidence which challenges the complete and accurate statement of facts presented by Mr. Montecalvo. **ACE** then makes the bold assertion that "its chronology of relevant events ... is helpful." Not so. In fact, **ACE**'s chronology is seriously misleading; **ACE** inserts the date Mr. Alcus issued his report to **ACE**, February 6, 2014, between the date of the initial joint survey, February 4, 2013 and the date Claimant initially "expressed his unhappiness with the estimate," late February 2013. **ACE** confirms that Mr. Alcus did not provide his written report to **ACE** until February 6, 2014, a year after the joint survey. Likewise, **ACE**, not having Alcus's report, could not have provided Mr. Alcus's report to Mr. Montecalvo prior to February 2014.

Further, **ACE**'s characterization that Mr. Montecalvo expressed his "unhappiness with the estimate" is absurd. Mr. Montecalvo did not express unhappiness; he pointed out that the estimate was wrong. In response, **ACE** acknowledged that the estimate was flawed and issued a supplemental estimate increasing the cost of repairs. This was the first of several conversations which took place over nineteen months wherein Mr. Montecalvo challenged **ACE**'s adjustment of the claim and **ACE** adjusted the claim in Mr. Montecalvo's favor.

In short, the chronology of events clearly establishes that no controversy or claim arose between Mr. Montecalvo and **ACE** until October 24, 2014. Any request for arbitration was, therefore, due before October 24, 2014, which was obviously the case here.

II <u>Mitigation Has No Relevance to Mr. Montecalvo's Right to Arbitrate the Controversy</u>.

The arbitration provision in the policy does not reference an insured's obligation to mitigate its damages. The arbitration provision provides that "Any controversy or claim, ... (including but not limited to any claim ...arising out of or related to this policy, the interpretation, ... or breach thereof, or the handling of any claim involving this policy), shall be referred to and settled by arbitration." The terms of the Arbitration provision in **ACE**'s policy does not address the issue of mitigation. [21]

**ACE** attempts to muddy the waters with its false allegations re mitigation. The evidence is to the contrary. Mr. Montecalvo winterized, shrink-wrapped and placed the Vessel on land shortly after the loss. (See Exhibits 22 and 23.) There is no evidence presented by **ACE** establishing that Mr. Montecalvo did not mitigate his damages, just pure speculation by **ACE**. The issue of mitigation is of course irrelevant to whether the arbitration was timely commenced.

Therefore, **ACE**'s motion to dismiss Mr. Montecalvo's claim as untimely should be denied.

Respondent's Sur-Reply

Respondent argues that Claimant's Sur-Reply takes aim at clarifying tangential facts, but these issues have no bearing on the single issue to be resolved -- the timeliness of the action as a matter of law. Moreover, Respondent contends that Claimant's Sur-Reply does not address the clearly established rule of law presented by **ACE**, which

---

[21] The use of the terms "[a]ny controversy or claim" and "loss or damage" is ambiguous and unclear. As mentioned by Mr. Fox in a telephone conversation with the parties the provision is likewise ambiguous as to what arbitration rules apply.

Case 0:24-cv-60161-WPD   Document 17-3   Entered on FLSD Docket 04/17/2024   Page 15 of 19

Page 14 of 18

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company, As Respondent Under a Recre....

holds that adjustment and negation of a claim do *not* at all alter the time for seeking arbitration. [22] Indeed, Claimant's express request to extend the contractual limitations period shows his contemporaneous knowledge and understanding of the expired clock. The one-year time limitation period contained in the insurance contract specifically runs from the date of loss. [23] Claimant offers no authority to support conclusory assertions to the contrary. Mr. Montecalvo's loss occurred on October 29, 2012. Over two years after the loss, on December 10, 2014, Claimant demanded arbitration of his claim, untimely.

I *ACE*'s Chronology of Events is Valid

*ACE* contends that, although the issue is inconsequential to the timeliness of this matter, Claimant's assertion that *ACE* misleadingly dated its chronology of events is not true. *ACE*'s timeline reflects *ACE*'s receipt of Alcus Marine's appraisal report as received immediately after the February 4, 2013 joint survey, and just prior to Claimant's late February, 2013 request for a new inspection. [24] This is the accurate sequence of events. Claimant is correct that the submission date of Alcus Marine's survey as occurring on February 6, 2014, is an error. A typographical error. *ACE* received Alcus Marine's survey report on February 6, 2013. [25] And, as previously discussed, *ACE* provided Claimant with Alcus Marine's initial appraisal report immediately upon Claimant's request, which was not until May 23, 2014. [26] Nevertheless, this detail is not relevant to the contract terms.

II The Arbitration Clause is Clear

*ACE* argues that Claimant takes a second bite of the apple by again arguing that the arbitration clause is ambiguous. [27] That is outside of the defined limits of Claimant's request for a Sur-Reply.

More importantly, *ACE* maintains, Claimant's Sur-Reply ignores the clearly established law cited in *ACE*'s briefs, which shows that the clause is *not* ambiguous both (i) as understood by Mr. Montecalvo and (ii) as a matter of law. ==This important case-law remains completely unchallenged. See *Klawiter v. CGU/ONEBEACON Ins.*, 810 N.Y.S.2d 756 (App. Div. 4th Dept. 2006); *Roberts v. New York Property Ins. Underwriting Ass'n.*, 677 N.Y.S.2d 621 (App. Div. 2nd Dept. 1998); *Stony Brook Marine Transportation Corp. v. Wilton*, 1997 WL 538913 (E.D.N.Y. 1997); *Mele v. Mutual Marine Office*, 1992 A.M.C. 1717 (Sup. CT Suffolk Co. 1991). These controlling cases have determined similar language in an insurance contract's time limitation clause to be clear, valid and enforceable==. These cases are discussed in further detail in *ACE*'s initial Brief and Reply Brief. [28]

III The Insurance Contract Requires Mitigation

*ACE* asserts that it agrees with Claimant's admission that the issue of 'mitigation' is inapplicable to the outcome of this time-barred matter. [29] However, for purposes of clarity, *ACE* points out that the insurance policy does require mitigation of damages. [30]

---

[22] Gilbert Frank Corp. v. Federal Ins. Co., 70 N.Y.2d 966 (1988); Arkin-Medo Corp. v. St. Paul Fire and Marine Ins. Co., 585 F.Supp. 11 (E.D.N.Y. 1982; Helios Trading Corp. v. Great Amer. Ins. Co., A.M.C. 2157 (S.D.N.Y. 1993). See Respondent's Reply Brief (p. 12); Respondent's Brief (p. 7).

[23] See Respondent's Reply Brief, (p. 7-8, P2) and (p. 12).

[24] See Respondent's Reply Brief, (p. 2, Chronology of Events).

[25] See Exhibit P, Cover Page of Alcus Marine Survey.

[26] See Respondent's Reply Brief, (p. 3, f.n.5).

[27] See Claimant's Sur-Reply, (p. 4, f.n. 3).

[28] See Respondent's Reply Brief, (p. 5-8); Respondent's Brief, (p. 7).

[29] See Claimant's Sur-Reply, (p.4, P1).

[30] See Exhibit Q, Policy, Protection Against Loss and Salvage, (p. 5).

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company, As Respondent Under a Recre....

ACE argues that Claimant suggests that ACE set forth certain incorrect assertions about non-compliance with his mitigation obligation by invoices showing the storage of the WASTE KNOT in November, 2012 and June, 2013. However, Claimant does not address the fact that no repairs have yet been started or made to the Vessel despite having been paid $ 299,768.51.

Accordingly, ACE requests this matter to be dismissed as untimely.

**Discussion and Decision**

It is undisputed that the damage occurred on October 29, 2012, during the policy's period of coverage, that Claimant submitted a proof of loss on November 1, 2012 and that he demanded arbitration on December 10, 2014.

Moreover, as the parties' motions in this matter cover the threshold issue of time bar, the amounts involved in the failed settlement negotiations are irrelevant. The extensive factual timeline recounted above is relevant to the extent that it describes the lengthy period over which this dispute continued arose and continued. However, I have carefully considered the wording of the arbitration clause and parties' arguments and legal citations in rendering my decision.

The Arbitration Clause

The arbitration clause reads in pertinent part:

> Any controversy or claim, whether based on contract, tort, statute or other legal or equitable theory (including but not limited to any claim of fraud, misrepresentation or fraudulent inducement, arising out of or related to this policy, the interpretation, enforcement or breach thereof, or the handling of any claim involving this policy), shall be referred to and settled by arbitration ...
>
> d. The request for arbitration must be filed within one (1) year of the date of loss or damage; and
>
> e. **We** may arbitrate the amount of your loss or damage without waiving our right to determine coverage or a lack of coverage for the loss.

The Parties' Actions after the Date of Loss

As recounted above, there were numerous extensive exchanges between the parties during the period between the date of loss (October 29, 2012) and the date of Claimant's demand for arbitration (December 10, 2014).

One of the most important communications in highlighting the potential dispute was ACE's email to Claimant of May 17, 2013. In that email, ACE advised that it had issued a check to Claimant in the amount of $ 299,285.51, which represented the revised estimated repair cost of $ 316,968.51 (later rounded to $ 320,000) less the policy deductible of $ 17,200. ACE claimed that the payment represented "a fair and reasonable settlement of the loss..." and also maintained that "the damages in this amount are not in dispute." In the same email, ACE denied coverage for the $ 64,000 sought by Claimant to renew the Vessel's undamaged superstructure, claiming that it was "excessive, unnecessary and beyond the scope" of the Property Damage Coverage (Part A) of the policy.

==Significantly, at the same time. ACE also informed Claimant of his option to appeal ACE's position internally and also alerted Claimant to the time bar clause in the policy, if Claimant chose instead to exercise his other option to arbitrate the dispute==.

The second communication bringing the dispute to the forefront was Claimant's email rejection on May 23, 2013 of ACE's May 17th position and his advice that he was in the process of reviewing his options under the policy as well as under the State of New Jersey Guidelines. The same email requested ACE to forward a check for the undisputed portion of the claim.

==With that exchange of emails, the parties' respective positions began to emerge with respect to the nature and extent of the dispute. At that point, a reasonably prudent Claimant would have intensified any review of his options under the policy. Indeed, the most significant action which Claimant could have taken, as required under the terms of the==

Case 0:24-cv-60161-WPD   Document 17-3   Entered on FLSD Docket 04/17/2024   Page 17 of 19

Page 16 of 18

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company , As Respondent Under a Recre....

policy to protect his interests, was to have considered demanding arbitration at some point before the expiration of the time limit. On May 23, 2013, almost seven months on the arbitration time-limit clock had already elapsed. Instead, Claimant neither sought relief under the state-mandated internal review policy, nor subsequently timely demanded arbitration. As the matter further progressed, the time-limit clock continued to run down and Claimant did almost nothing further to protect his interest while communications between the parties continued to harden the dispute.

Interestingly, the only substantive, but ultimately futile, protective action taken by Claimant was in his letter of September 26, 2013, which reserved "all rights available in the insurance policy and under law." [31] While that action squarely fell within the October 29, 2013 time limit, it was ineffective with respect to Claimant's rights under the arbitration clause, as it was legally insufficient as an affirmative demand for arbitration under section (d) of that clause.

In contrast, by invoking the arbitration clause at that time, or at a later time before the time bar limit, he could have protected his rights under the policy while those communications and negotiations with **ACE** proceeded. In practice, it is quite normal for parties who have already entered into the arbitration process to continue commercial efforts at settlement on a "without prejudice" basis, while not surrendering their rights to continue to arbitrate the dispute, should those negotiations fail.

However, while Claimant failed to demand arbitration as required by the arbitration clause during those negotiations, **ACE** had already explicitly reserved its rights to continue any negotiations by virtue of the wording of the last paragraph of the arbitration clause:

> e. We may arbitrate the amount of your loss or damage without waiving our right to determine coverage or a lack of coverage for the loss.

The language of time limit section (d) of the arbitration clause required that an effective arbitration demand should have been filed no later than October 29, 2013, notwithstanding the exchanges referred to above, both within and beyond that date. Claimant failed to meet that obligation in order to preserve his ability to arbitrate his claim.

The Ambiguity Issue

Claimant has argued that, as **ACE**'s product, the arbitration clause relating to the time to commence proceedings is ambiguous and cannot be enforced because it does not consider "any controversy or claim" or "loss or damage." Moreover, Claimant asserts that a more reasonable interpretation would be that the time for demanding the arbitration should begin to run from the time when a controversy or claim concerning the handling of a loss had arisen. That contention is flawed and implies a wholly subjective modifying interpretation of section (d), which cannot be sustained by the plain language of that section.

The arbitration clause contains two parts. The first sentence of the initial large paragraph of the clause provides that any claim or controversy (*i.e.* contract, tort, statute or other legal or equitable theory shall be referred to and settled by arbitration. Also contained in that sentence as a basis for arbitration is "the handling of any claim involving this policy."

The second sentence of that paragraph specifies the governing arbitration authority under which a claim may be brought and how judgment upon the award may be entered in a court having jurisdiction. The third and last sentence of that initial paragraph provides that the arbitration will be held in the insured's state of residence as contained in the policy's Declaration Page and in accordance with the procedure specified in the four sections (a) through (d) of the second part of the clause. Sections (a) through (c) of that second part deal with the allocation of arbitrators' fees, the appointment of arbitrators and the allocation of fees charged by the American Arbitration Association to coordinate the arbitration. [32]

---

[31] Exhibit L, *supra.*

[32] The AAA was not involved in this matter. As advised above, the parties agreed on a Submission Schedule, notwithstanding the procedures specified in the arbitration clause concerning the conduct of the proceedings.

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company, As Respondent Under a Recre....

It is with section (d) that Claimant's arguments confuse substance with process. Upon close review, the comprehensive arbitration clause cannot be considered ambiguous, as the delineation between substance (the basis for the arbitration) and process (the procedure for resolution) is apparent, in that there is no reference within any of those four sections to any substantive issues, such as claim or controversy. Indeed, by Claimant's interpretation, the time limit for a demand for arbitration would not commence until the parties had exhausted all attempts to resolve their differences. While that reasoning may be appealing, it is clearly in conflict with the plain wording of section (d). Contract terms have meanings that should be reasonably and fairly applied. Moreover, even if, as Claimant asserts, the "claim or controversy" or "loss or damage" had not yet occurred by the October 29, 2013 deadline for demanding arbitration, his apparent dissatisfaction with **ACE**'s handling of his claim could very well have served as a permitted basis for demanding arbitration prior to the limiting date.

In any case, Claimant failed to timely assert his right to demand arbitration and cannot now remedy that default by claiming that the arbitration clause is ambiguous, and that it should be interpreted in his favor by the consideration of language, which <u>plainly does not exist</u> in section (d) and which cannot be reasonably implied to be contained therein.

The arbitration clause in this matter is comprehensive and unambiguous in that it clearly states the rights and obligations of both parties with respect to dispute resolution. Moreover, the burden is upon the parties to prudently exercise their rights and observe their obligations in a timely manner under that (or any other) arbitration clause.

With respect to the issue of ambiguity, the Court's finding in *Kelly, supra*, is instructive:

> With respect to plaintiff's claim that the limitation-of-action clause is ambiguous, it is clear that the policy imposes duties on both parties. It imposes a duty on Standard to pay covered claims made by the insured; to defend and indemnify the insured with respect to third-party claims; to pay reasonable medical and funeral expenses for persons injured while in, upon, boarding or leaving the covered yacht; to investigate claims made against the policy; and to pay for the destruction or removal of covered property presenting an "attractive nuisance." The policy also imposes a duty on plaintiff to give notice of loss as soon as practicable and provide the information required by the policy; to assist in loss settlement; to refrain from assuming any contractual liabilities; to refrain from waiving any rights against others; to submit to examination under oath; to give a written statement of loss within sixty days of a request for same; to protect damaged property from further damage; and to allow inspection of the property and to produce records verifying the claim.

**ACE**'s email of May 17, 2013, reminded Claimant of his rights under the time limit provision. That warning strongly reminded Insured of his obligation to consider intensively reviewing the arbitration clause (perhaps with legal assistance) with respect to the preservation of his rights under the policy. Clearly, Claimant subsequently failed to meet his obligation to exercise those rights under that provision in order to protect his interests. As there was no reasonable basis for confusing substance with procedure, there was also no ambiguity in the arbitration clause.

The Estoppel Issue

Claimant argues alternatively that, even if the one-year time limit began to run from the date of the loss, **ACE** should be estopped from relying on that time limit as a defense because of its continuing communications with Claimant and the reopening of the adjustment to address supplemental damage. However, courts have long held that estoppel of a party requires an affirmative act by that party that effectively constitutes a waiver.

Indeed, in *Gilbert Frank, supra*, the Court of Appeals of New York reversed an order of the Appellate Division, which had denied summary judgment for the defendant insurer and, instead, found:

> By citing the insurance policy's 12-month limitations period, defendant satisfied its burden of producing evidence which, if uncontroverted, is sufficient to warrant judgment in its favor as a matter of law. Plaintiff, on the other hand, did not meet its burden of demonstrating the existence of any material triable issue of fact. Evidence of communications or settlement negotiations between an insured and its insurer either before or after expiration of a limitations period contained in a policy is not, without more, sufficient to prove waiver or estoppel, and plaintiff offered no evidence from which a clear manifestation of intent by defendant to relinquish the protection of the

In the Matter of the Arbitration Between Frank Montecalvo, As Owner of M/Y WASTE KNOT, Claimant And ACE American Insurance Company, As Respondent Under a Recre....

contractual limitations period could reasonably be inferred. Nor do the facts show that defendant, by its conduct, otherwise lulled plaintiff into sleeping on its rights under the insurance contract.

That finding is exquisitely *en pointe* with this matter, especially in view of the extensive communications between the parties, both before and after the expiration of the time limit. Plainly, had Claimant exercised his right to demand arbitration in a timely manner, he could have continued those negotiations with **ACE** without prejudice to the arbitration process. He failed to do so and, as **ACE** did not affirmatively waive, or even imply that it would waive, the time limit, there is no basis for a finding of estoppel. Ironically, Claimant's failure to demand arbitration in accordance with the terms of the policy's arbitration clause effectively serves as an estoppel of his claimed right to proceed with a resolution of the dispute on the merits.

Claimant also alleges that **ACE** should be estopped because the settlement process was unfair to him. **ACE** rejects that argument, claiming that the chronology and affidavits belie any claim of unfairness and that it was Claimant's desire to have the Vessel declared a constructive total loss. Whatever Insured's motives may have been, they are not relevant with respect to the decision here. See *Arkin-Medo Corp. v. St. Paul Fire and Marine Ins. Co.*, 585 F.Supp.11 (E.D.N.Y. 1982), *supra*. Moreover, Claimant's own failure to protect his interests has resulted in a self-inflicted adverse result.

For the all of the above reasons, I find that Claimant failed to meet his obligation of complying with the policy's requirement of demanding arbitration within the one-year time limit. He also failed to meet his burden of proving that **ACE** was unreasonable under the policy in rejecting his late demand. Accordingly, his demand for insurance coverage by **ACE** is denied.

**Award**

The parties have agreed to bear their own costs. My fee in this matter and its manner of settlement is set forth in the attached Appendix "A", which forms an integral part of this award.

The Arbitration Clause provides that this award may be confirmed in a court of competent jurisdiction.

New York, NY

**Load Date:** 2015-08-15

Copyright © Society of Maritime Arbitrators, Inc.

End of Document